IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03-00307-01-CR-W-SOW |
| | ) | |
| DAVID R. HILL, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Pending before the Court are the following two motions:

1. Request to Revisit Issue of Defendant's Competency (doc #42); and

2. Defendant's First Motion in Limine Concerning Mental Competency Hearing (doc # 44).

I. BACKGROUND

On February 28, 2003, a criminal complaint was filed against David R. Hill. The complaint charged that on February 27, 2003, defendant Hill knowingly possessed with intent to distribute five grams or more of cocaine base ("crack"). On March 7, 2003, defense counsel filed a Motion for Mental Examination which was granted by Magistrate Judge Maughmer on March 19, 2003.

Dr. William S. Logan was contacted to perform the examination on April 16, 2003. Dr. Logan provided a report on May 2, 2003, but he had not received any medical or psychiatric records to review. (See Defendant's Ex. 7 at 12) Records were subsequently provided to Dr. Logan and on August 5, 2003, Dr. Logan provided a supplemental report confirming his earlier finding that defendant Hill was incompetent and that his condition would not improve. This report concluded that "Mr. Hill's history in the opinion of this examiner suggests Mr. Hill has a substantial risk of

bodily injury to others." (Defendant's Ex. 8 at 7) Government counsel requested that defendant Hill be taken into custody for the purpose of receiving psychiatric treatment. Magistrate Judge Maughmer denied the government's request. On August 25, 2003, Magistrate Judge Maughmer signed an Order dismissing the complaint based on a violation of 18 U.S.C. § 3161.

On September 17, 2003, the Grand Jury returned a one count indictment against defendant Hill. The indictment charged that on February 27, 2003, defendant Hill knowingly possessed with intent to distribute cocaine base ("crack") in an amount of five grams or more.

On September 19, 2003, the Government filed a motion pursuant to 18 U.S.C. § 4241(a) asking for a determination of defendant's mental competency. As grounds for this motion, counsel for the government referred to the reports prepared by Dr. Logan on May 2 and August 5, 2003.[1] On the basis of the government's motion, the Court ordered a mental evaluation by Dr. Delaney Dean.

Following receipt of Dr. Dean's report, a hearing on the government's motion to determine competency was held on January 14, 2004.[2] The government presented the reports of Dr. Dean and Dr. Logan. The defendant presented six exhibits: the letters of guardianship, a 1997 psychiatric evaluation, a state judgment of incapacity, defendant's arrest record, Bureau of Prison regulations and a BOP report pursuant to 18 U.S.C. § 4241(d) in another case filed under seal. Based upon the documentary evidence introduced at the hearing, the undersigned recommended that the District

---

[1] Defense and government counsel agreed that Dr. Logan's reports did not meet all of the requirements under 18 U.S.C. § 4247 and that a further examination under 18 U.S.C. § 4241(a) was necessary.

[2] The Court originally scheduled the competency hearing for November 12, 2003, but at defendant's request the hearing was continued pending the Court's ruling on defendant's Motion to Dismiss Indictment.

2

Court enter an order finding defendant David Hill incompetent to stand trial.

On April 6, 2004, the District Court found defendant Hill incompetent to stand trial. Defendant Hill was admitted to the Federal Medical Center in Butner, North Carolina, on May 24, 2004, for a determination as to whether there was a substantial probability that he would attain the capacity to permit the trial to proceed in the foreseeable future. Defendant was released from the Federal Medical Center on September 27, 2004.

A Forensic Evaluation prepared by Dr. Robert E. Cochrane and Dr. Bryon Herbel was provided to the Court on October 18, 2004. In this evaluation, defendant was found competent to stand trial. The warden of the Federal Medical Center in Butner signed a Certificate of Restoration of Competency to Stand Trial.

On November 30, 2004, the Government filed a Request to Revisit Issue of Defendant's Competency based on the Certificate of Restoration of Competency to Stand Trial and the Forensic Evaluation. Thereafter, defense counsel filed Defendant's First Motion in Limine Concerning Mental Competency Hearing seeking an order prohibiting the United States from introducing or referring to any evidence mentioned in the report of Dr. Cochrane concerning defendant's treatment at the Federal Medical Center.

The undersigned deferred ruling on defendant's motion in limine finding that the issues raised by defendant could only be decided in the context of an evidentiary hearing. A hearing was scheduled for February 18, 2005. At the parties' request, the hearing was continued to April 7, 2005. Defendant Hill was represented by appointed counsel Gary Hart. The Government was represented by Assistant United States Attorney David DeTar Newbert. The Government called Dr. Robert Cochrane as a witness. The defense called no witnesses to testify.

## II. FINDINGS OF FACT

On the basis of the evidence presented at the hearing held on April 7, 2005, the undersigned submits the following proposed findings of fact:

1. Dr. Robert Cochrane is a board certified forensic psychologist employed at the Federal Medical Center in Butner, North Carolina. (Tr. at 4) Dr. Cochrane first came in contact with defendant Hill in May of 2004. (Tr. at 5)

2. With respect to defendant's background, Dr. Cochrane noted that defendant had been hospitalized on several occasions for gunshot wounds. (Tr. at 7) Most notably, defendant suffered a gunshot wound to the head in 1989. (Tr. at 7) Defendant had two surgeries due to the penetrating gunshot wound, which entered the right parietal-occipital region of his brain. (Tr. at 7) In March 1994, defendant suffered gunshot wounds to the abdomen and the neck. (Tr. at 7) Later in 1994, defendant was involved in two motor vehicle accidents. (Tr. at 7-8) No subsequent damage to the brain was noted as a result of these accidents. (Tr. at 7-8) It was noted after the second accident that defendant tested positive for PCP and cocaine was located on his person. (Tr. at 8)

3. Dr. Cochrane testified that in the records provided to him, defendant's wife denied that defendant abused any substances, alcohol or any illicit substance. (Tr. at 8-9) Defendant's wife described defendant as not being able to cook, do laundry, manage money, drive or perform other basic daily living activities. (Tr. at 9) Defendant's wife reported that defendant had amnesia for much of his life both pre- and post-injury in 1989. (Tr. at 9)

4. Dr. Cochrane noted that Dr. Donald Simmons had assessed defendant on three occasions, two times in 1992 (in relation to receiving Social Security benefits and having a guardian appointed) and once in 1996 (following criminal charges). (Tr. at 9) Dr. Simmons diagnosed defendant with organic personality disorder, dementia and depression. (Tr. at 9) Defendant's wife advised Dr. Simmons that defendant needed extensive assistance, including help bathing and getting dressed. (Tr. at 9) Dr. Simmons concluded that defendant should receive disability payments and a guardian was eventually appointed as a result of Dr. Simmons' evaluations. (Tr. at 9)

5. Dr. Cochrane noted that following criminal charges of sale of a controlled substance in 1992, Dr. Mandracchia performed an outpatient evaluation of defendant. (Tr. at 9-10) Dr. Mandracchia found that defendant presented as being disoriented, distractable, having very poor comprehension and irritable. (Tr. at 10) Dr. Mandracchia diagnosed defendant with organic mental disorder and opined that he was not competent to stand trial on the charges. (Tr. at 10) In October 1992, Dr.

Thomas Geen evaluated defendant's competency to stand trial for several motor vehicle charges, that is leaving the scene of an accident, driving while intoxicated and careless driving. (Tr. at 10) Dr. Geen noted many of the same deficits that Dr. Mandracchia had noted with the additional findings that defendant did not appear very interested or involved in the procedures and did not appear to be oriented to the time or even where he was located. (Tr. at 10) Dr. Geen diagnosed defendant with dementia due to the head trauma and offered the opinion that he was not competent to stand trial. (Tr. at 10)

6. Dr. Cochrane noted that in May 2003, Dr. William Logan assessed defendant's competency in relation to the current charges. (Tr. at 10-11) Dr. Cochrane noted that defendant gave Dr. Logan his incorrect age and told Dr. Logan that he had never been shot or arrested. (Tr. at 11) Dr. Cochrane further noted that defendant's wife told Dr. Logan that defendant was in a coma for three to four months following the 1989 injury, but this actually was not the case. (Tr. at 11) Dr. Logan concluded that defendant had dementia, substance-related disorder, psychotic disorder due to trauma with hallucinations, mood disorder due to the head trauma and personality disorder with paranoid and anti-social traits. (Tr. at 11) Dr. Logan gave the opinion that defendant was not competent. (Tr. at 11) Dr. Cochrane testified that Dr. Logan made a brief reference to the possibility that defendant could be malingering and indicated that it would probably be beneficial for him to be assessed on a longer term basis in an inpatient setting. (Tr. at 11; Defendant's Ex. 7 at 14-15)

7. Dr. Cochrane noted that in October 2003, Dr. Delany Dean assessed defendant's competency in relation to the current charges. (Tr. at 11) Dr. Dean saw defendant on two occasions. (Tr. at 11) Dr. Dean noted that defendant did not appear very interested in the process. (Tr. at 11) Dr. Dean diagnosed defendant with dementia due to the brain injury, gave a rule-out diagnosis of substance abuse and further diagnosed him with anti-social features. (Tr. at 12) Dr. Dean stated that defendant had a very limited capacity to communicate, was extremely guarded and could not distinguish fantasy from reality. (Tr. at 12) Dr. Dean opined that defendant was not competent to stand trial. (Tr. at 12) Dr. Cochrane testified that Dr. Dean made a brief reference at the end of her report that inpatient treatment would be appropriate for defendant. (Tr. at 12; Defendant's Ex. 9 at 7)

8. In addition to defendant's prior evaluations and medical history, Dr. Cochrane reviewed defendant's police reports and his criminal history background. (Tr. at 13) Dr. Cochrane noted that defendant had been arrested on 32 occasions since 1982. (Tr. at 13) Since his head injury in 1989, defendant had been arrested on fourteen occasions. (Tr. at 13) However, most of these charges were either dismissed or transferred. (Tr. at 13) Dr. Cochrane was particularly interested in any descriptions of defendant's behavior from arrests subsequent to the brain injury. (Tr. at 13) In 1995, defendant was eluding police in his vehicle. (Tr. at 13-14) After defendant was apprehended, he acknowledged that he was smoking PCP at the time. (Tr. at 14)

5

In 1996, defendant and another subject allegedly broke into a hotel while wearing masks and brandishing firearms and tied up and robbed the individuals in the hotel. (Tr. at 14) In January 2000, defendant was pulled over in a vehicle on suspicion that he possessed cocaine. (Tr. at 14) Defendant was quoted at that time as stating, "The stuff you got is my toothache medicine," which Dr. Cochrane testified seemed to indicate that defendant knew he was being accused of having an illegal substance. (Tr. at 14) In April 2001, defendant evaded police in a vehicle following a hit-and-run collision and then failed the field sobriety test. (Tr. at 14)

9. Dr. Cochrane testified that the normal procedure when someone is admitted to Butner is to initially gather and review as much relevant background data as possible. (Tr. at 15) They then begin interviewing the patient and talking to any family members or significant others who might know the patient. (Tr. at 15)

10. When an individual arrives at Butner, the staff has to assess the most suitable place for the patient in the hospital. (Tr. at 15) In defendant's case, based on his initial presentation and the reports received from defendant's counsel, the staff believed that defendant was severely impaired so he was placed in the intensive treatment unit of the mental health section of the hospital. (Tr. at 15-16) Defendant was eventually moved from this unit and placed in open population. (Tr. at 16-17) Defendant was moved because he was functioning "surprisingly well." (Tr. at 17) Defendant maintained his personal hygiene exceptionally well, better than most inmates on the unit. (Tr. at 17) He did not need any assistance. (Tr. at 17) He did not appear to be severely confused or have problems following directions. (Tr. at 17) Defendant continued to function at a fairly high level on the open unit. (Tr. at 17) Defendant was always on time for his appointments and seemed able to navigate himself throughout the institution. (Tr. at 17-18) The institution consists of five medical floors and houses about 1,000 inmates. (Tr. at 18)

11. Dr. Cochrane had significant personal contact with defendant Hill. (Tr. at 18) Dr. Cochrane conducted sit-down interviews of defendant on fourteen occasions. (Tr. at 18) These interviews would last anywhere from 30 to 60 minutes. (Tr. at 19) Dr. Cochrane further chatted with defendant two or three times a week while walking about the units. (Tr. at 18-19) Dr. Cochrane carries a caseload of approximately twelve pretrial cases at a time and testified that he had ample time to observe defendant. (Tr. at 19) In addition to Dr. Cochrane's personal contact and observations, he received feedback from the nursing staff and correctional officers who observed and interacted with defendant. (Tr. at 19)

12. Dr. Cochrane provided counsel with 32 pages of progress notes. (Tr. at 20) Progress notes are notations from staff about the patient's care and observations of the patient while at the facility. (Tr. at 19-20) These progress notes were admitted as Government's Exhibit 2. (Tr. at 20-21) The progress notes show that defendant initially refused to eat and lost a significant amount of weight. (Tr. at 33-34)

6

Defendant also initially complained that he was unable to sleep. (Tr. at 35) Dr. Cochrane testified that staff noted that defendant's behavior and abilities were not as impaired as they had initially suspected. (Tr. at 21) For example, during conversations with different staff members, defendant was able to recall pertinent information across several day periods of time. (Tr. at 21) The staff also noted that defendant's presentation was consistently different with his peers than with staff members. (Tr. at 21) Especially towards the latter half of the evaluation, defendant was much more talkative and smiling and joking with other inmates, but was extremely guarded, flat and irritable with staff. (Tr. at 21)

13. Dr. Cochrane attempted, on several occasions, to talk with defendant about his pending legal charges. (Tr. at 21) Dr. Cochrane testified that defendant was unwilling to share much about the case or about the charges. (Tr. at 21) Defendant refused to take a copy of the indictment. (Tr. at 22) Dr. Cochrane testified that defendant refused to try to learn about what he claimed he did not know. (Tr. at 22) When asked whether his charges related to drugs, robbery or assault, defendant responded that none of those sounded familiar. (Tr. at 22)

14. Dr. Cochrane spoke to defendant's pretrial services officer, Nick Zych, while defendant was at Butner. (Tr. at 22) Mr. Zych advised Dr. Cochrane that during his routine conversations with defendant, he did not notice any gross memory deficits. (Tr. at 22) He did not notice any problem with defendant recalling information that they had discussed from one meeting to the next. (Tr. at 22) He did not see any obvious signs of depression. (Tr. at 22) Mr. Zych noted that defendant was frustrated with the fact (and expressed his displeasure to Mr. Zych) that at one point his charges were dropped, but then they were reinstated. (Tr. at 22-23) Mr. Zych further noted that while defendant initially would not provide much information, over time and with more prompting, he disclosed more information. (Tr. at 23) Dr. Cochrane found inconsistencies in how defendant expressed his understanding of his legal charges when he interacted with Mr. Zych (and seemed aware of the charges) and when he interacted with Dr. Cochrane (and said he did not have any charges). (Tr. at 23)

15. Dr. Cochrane noted that there were several inconsistencies that he saw in defendant that raised his suspicion early on that defendant might be exaggerating his cognitive impairment. (Tr. at 23) Based on these inconsistencies, Dr. Cochrane wanted to administer a full battery of neuropsychological testing, including the Test of Memory Malingerer ("TOMM"). (Tr. at 23-24) Dr. Cochrane testified that, unfortunately, defendant was not willing to do any testing until near the end of the evaluation period. (Tr. at 24)

16. On June 9, 2004, Dr. Cochrane reviewed some of defendant's telephone conversations. (Tr. at 41) Dr. Cochrane reviewed the telephone conversations because of the inconsistencies that led him to hypothesize that defendant may not

7

have been accurately reporting or presenting his impairments. (Tr. at 41) Dr. Cochrane testified that these inconsistencies consisted of the fact that despite his impairment, defendant had been arrested fourteen times subsequent to his injury. (Tr. at 41-42) Defendant was noted to be driving on several occasions. (Tr. at 42) One of the other evaluators seemed to question possible malingering. (Tr. at 42) The documented injuries were not necessarily consistent with the impairment defendant was presenting. (Tr. at 42) Based on the prior competency reports, defendant was reporting some rather extreme deficits that are rarely seen, such as not knowing his age or where he was located. (Tr. at 42) Dr. Cochrane testified that generally individuals who are so brain damaged that they do not know their age or other basic information are not capable of finding themselves getting in trouble with the law, let alone being able to drive a vehicle. (Tr. at 42) Dr. Cochrane testified that defendant's telephone conversations elevated the data to support Dr. Cochrane's hypothesis that defendant was feigning or grossly exaggerating. (Tr. at 43) Dr. Cochrane had wanted to administer psychological tests prior to listening to defendant's telephone conversations, but defendant would not agree to the testing until later on in the evaluation. (Tr. at 43-44)

17. On July 14, 2004, Dr. Cochrane reviewed some additional tapes of defendant's telephone conversations. (Tr. at 50) These conversations further confirmed Dr. Cochrane's hypothesis that defendant was feigning cognitive deficits. (Tr. at 51)

18. Dr. Cochrane has administered the TOMM approximately 35 times at Butner and considers it a very reliable and valid instrument. (Tr. at 24, 26) The TOMM is a test that assesses for gross exaggeration of memory deficit. (Tr. at 24) It is a memory recognition test that includes 50 drawings. (Tr. at 24) The patient is shown each drawing for three-second periods consecutively, and then the patient is shown two pictures, one of which was previously shown. (Tr. at 24) The patient is then asked to point to the picture previously shown. (Tr. at 24) This is done on three successive trials. (Tr. at 24) Dr. Cochrane testified that defendant's performance on the TOMM was clearly indicative of malingering memory. (Tr. at 24) Defendant's scores were much, much lower than elderly patients with dementia or people who have traumatic brain injuries. (Tr. at 25) Dr. Cochrane testified that people with dementia typically score in the mid-40s by the third trial. (Tr. at 25) Scores are even higher for brain injured groups. (Tr. at 25) In addition, Dr. Cochrane found it significant that defendant's performance did not improve over the three successive trials; instead, it actually got worse, which is very unusual. (Tr. at 25) Defendant scored 20 on the first trial, 17 on the second trial and 5 out of 50 on the final trial. (Tr. at 25) Dr. Cochrane testified that even if someone had no memory whatsoever, they would score approximately 25 out of 50 just by pure chance. (Tr. at 26) The statistical probability of scoring 5 is one in one million. (Tr. at 26) The only conclusion that Dr. Cochrane could draw was that defendant knew the correct answers and purposely chose the wrong answers. (Tr. at 77)

8

19. Defendant was seen by a neurologist and a brain scan was performed given the fact that the records indicated defendant had suffered a brain injury. (Tr. at 27) The neurologist concluded that the cognitive and memory problems defendant was presenting did not follow any organic pattern whatsoever, in other words, it did not make sense that defendant would have the kind of deficit he was reporting to have based on the injury he suffered in the right parietal region of his brain. (Tr. at 27)

20. After assessing all of the information pertaining to defendant, including fourteen personal interviews, various daily contacts, review of input from other staff and their observations and defendant's results from the TOMM, Dr. Cochrane concluded that defendant was grossly exaggerating any cognitive deficits that he had. (Tr. at 27-28) Dr. Cochrane testified that he does not doubt that defendant has some mild cognitive problems, but they are not nearly as severe as defendant presented. (Tr. at 28) Dr. Cochrane prepared a report for the Court that outlined his findings that defendant had been restored to competency. (Tr. at 28-29; Government's Ex. 1) Dr. Cochrane testified that he did not find any significant evidence to suggest that defendant was not capable of understanding the nature and consequences of the charges or assisting his attorney. (Tr. at 29)

## III. DISCUSSION

On November 30, 2004, the Government filed a Request to Revisit Issue of Defendant's Competency based on the Certificate of Restoration of Competency to Stand Trial and the Forensic Evaluation. On December 8, 2004, defense counsel filed Defendant's First Motion in Limine Concerning Mental Competency Hearing. Through this motion, defendant requested that the Court prohibit the Government, during the mental competency hearing, from introducing or referring to any evidence mentioned in the report of Dr. Cochrane concerning defendant's treatment at the Federal Medical Center in Butner.

The 26-page Forensic Evaluation sets forth the following with respect to defendant Hill's recorded telephone conversations:

> Because of ... inconsistencies, the primary evaluator decided to listen to several of [Mr. Hill's] monitored phone calls to family members. Mr. Hill's speech was remarkably different during these phone conversations. He was soft-spoken but fluent and without delay in processing information or communicating. He spoke in lengthy, full sentences. He engaged in dialogue with his wife about routine events

9

in their lives and he often asked about numerous friends and acquaintances. He did not appear to have difficulty recalling remote, historical information. For example, he encouraged a male caller to locate a vehicle left parked on the street, commenting "It should have been off the street weeks ago." He also discussed the incident report he was [sic] received at the FMC days earlier, stating "They lied on me ... they said I took some medication and I didn't." Mr. Hill also requested his wife "put money on my books," that is, provide him money so he could make purchases at the commissary. During later calls, he became irritated when money was not sent in a timely manner. He asked his wife about his attorney and what his probation officer had been telling her on at least two occasions, showing some interest in his case as well.

(Forensic Evaluation at 17-18)

> While it is clear that Mr. Hill's presentation and what he has reported to mental health professionals is not an accurate reflection of his true abilities or deficits, this does not mean he does not have some memory and other cognitive deficits that would warrant a diagnosis of Cognitive Disorder. However, accounts from Mr. Zych, observations of his behavior at the FMC, and conversations Mr. Hill has had on the telephone recently, suggest his deficits are not particularly sever and do not meet the criteria for dementia (i.e., multiple cognitive deficits including memory impairment).

(Forensic Evaluation at 23)

In its Order of February 8, 2005, the Court provided the following guidance with respect to the issue of the recorded telephone conversations:

> Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 to 2521, generally prohibits the recording of oral or wire communications without a warrant and prohibits admission of such recordings into evidence, unless a specific exception to the Act applies. See United States v. Horr, 963 F.2d 1124, 1125-26 (8th Cir.), cert. denied, 506 U.S. 848 (1992). Two exceptions are worth noting in the situation currently presented to the Court. First, 18 U.S.C. § 2510(5)(a)(ii) authorizes the recording of telephone conversations when "an investigative or law enforcement officer" does so "in the ordinary course of his duties." Second, under 18 U.S.C. § 2511(2)(c), it is not unlawful for law enforcement officials "to intercept a wire, oral, or electronic communication, where ... one of the parties to the communication has given prior consent to such interception."

> Before deciding whether one or both of these exceptions would apply in this case, the Court would need information such as whether the recordings were done

in the ordinary course of law enforcement business, whether warnings were given and/or posted regarding the monitoring and recording of phone calls and whether there was a recorded warning that played during the phone call to announce to others that the call was subject to being monitored and recorded. For example, even if the defendant is correct in its argument that Mr. Hill could not waive his privacy interests, the other party to the phone conversation, defendant's wife and legal guardian, may have waived her privacy rights. However, no evidence has been presented to allow the Court to determine whether she was aware that the calls were being monitored. Thus, before the Court could consider the admissibility of these calls, an evidentiary hearing would need to be scheduled to allow the Court to consider all of the forgoing issues.

The Government also contends that even without reference to the information gleaned from defendant's behavior/conversations related to his monitored phone calls, ample evidence exists to support the findings of the Forensic Evaluation. (Government's Response at 2) In support of this argument, Dr. Cochrane provided the following by affidavit:

> 2. Your affiant prepared a forensic report, dated 09/21/04, based on an evaluation of Mr. David Hill. Over the course of his four month admission to the Federal Medical Center, several procedures were utilized in the assessment of Mr. Hill. These procedures included: clinical interviews, ongoing staff observations, physical examination, Computerized Tomography Brain Scan, consultation with the neurologist and neuropsychologist, review of Mr. Hill's monitored telephone calls, and psychological testing. Further, extensive collateral data was reviewed, including investigative reports, medical records, and mental health evaluations. Telephone interviews were also conducted with Mr. Hill's wife and pretrial services officer. These procedures are part of standard clinical practice for forensic evaluators in our setting. As a result of this extensive evaluation, your affiant opined that, among other things, Mr. Hill was exaggerating cognitive impairment and was competent to stand trial.

(Government's Response at Ex. 1, ¶ 2)

Dr. Cochrane did not specifically state that he would have reached his conclusion that the defendant was exaggerating cognitive impairment and was competent to stand trial even without reference to defendant's monitored telephone calls. However, counsel may inquire further into the basis for Dr. Cochrane's conclusions at the competency hearing. If it is shown that Dr. Cochrane would not have reached his conclusions but for the monitored telephone calls, then the Government must present evidence at the hearing that the monitoring of the calls was appropriate, if it wishes the Court to consider the opinions of Dr. Cochrane in deciding the competency issue. However, on the basis of the present record, the

11

Court cannot determine whether all or a portion of Dr. Cochrane's opinions will be based on inadmissible evidence.

(Order (doc #49) at 5-7)

The Court made the following ruling in its Order dated February 8, 2005:

ORDERED that any ruling on Defendant's First Motion in Limine Concerning Mental Competency Hearing (doc #44) is deferred. The issues raised by the defendant can only be decided in the context of an evidentiary hearing. However, to the extent the defendant is requesting that Dr. Cochrane be prevented from offering any testimony at a hearing on the Government's Request to Revisit Issue of Defendant's Competency (doc #42), the motion is denied.

(Order (doc #49) at 11)

During the competency hearing, the Government offered the Forensic Evaluation prepared by Dr. Cochrane as Government's Exhibit 1. Defense counsel responded:

Object, Your Honor, to the admission of Exhibit #1 inasmuch as it contains certain material from monitored telephone calls that, I believe, would not be admissible. So, with the exception of those portions of the report, I have no objection.

(Tr. at 30)

Government counsel chose to provide no evidence at the hearing regarding the monitoring of defendant's telephone calls. Without such evidence, the Court cannot find that the monitoring of the calls was appropriate and, therefore, will not admit those portions of the Forensic Evaluation which reference the monitored telephone calls. However, the remainder of the Forensic Evaluation is properly before the Court as the Government has presented ample evidence that Dr. Cochrane would have reached his conclusion that defendant was exaggerating cognitive impairment and was competent to stand trial even without reference to defendant's monitored telephone calls. The Government presented the following evidence to support Dr. Cochrane's conclusion without regard to the monitored telephone calls: Dr. Cochrane's fourteen personal interviews and various daily

12

contacts with defendant; Dr. Cochrane's review of input from other staff and their observations; the facts that despite his impairment, defendant had been arrested fourteen times subsequent to his injury and had been noted to be driving on several occasions (Dr. Cochrane noted that in prior competency reports, defendant was reporting some rather extreme deficits that are rarely seen, such as not knowing his age or where he was located and generally individuals who are so brain damaged that they do not know their age or other basic information are not capable of finding themselves getting in trouble with the law, let alone being able to drive a vehicle); Dr. Logan had previously questioned possible malingering; defendant's performance on the TOMM was clearly indicative of malingering memory; and the neurologist concluded that it did not make sense that defendant would have the kind of deficit he was reporting to have based on the injury he suffered in the right parietal region of his brain. (See Fact Nos. 16, 18, 19 and 20, supra) Defendant has not shown that Dr. Cochrane would not have reached his conclusions but for the monitored telephone calls.

## IV. CONCLUSION

The evidence before the Court provides reasonable cause to believe that the defendant is not presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings or to assist properly in his defense. Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order granting in part and denying in part Defendant's First Motion in Limine Concerning Mental Competency Hearing (doc #44). Those portions of the Forensic Evaluation which reference the monitored telephone calls should be excluded from the evidence considered in determining defendant's competency. The remainder of the Forensic Evaluation

13

should be deemed properly admitted into evidence. It is further

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order granting the Government's Request to Revisit Issue of Defendant's Competency (doc #42). It is further

RECOMMENDED that the District Court, after making an independent review of the record and applicable law, enter an order finding that defendant David R. Hill is not currently suffering from a mental disease or defect that would render him unable to understand the nature and consequences of the charges against him or to assist properly in his defense.

Counsel are reminded they have ten days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve timely objections shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

 */s/ Sarah W. Hays*  
SARAH W. HAYS  
UNITED STATES MAGISTRATE JUDGE